UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

POONEH R. MOMENI, *et al.*,

    *Plaintiffs,*

v.

ANTONY BLINKEN, *in his official capacity as Secretary of State*, *et al.*,

    *Defendants*.

Case No. 23-cv-3421-RCL

## MEMORANDUM OPINION

    Plaintiff Pooneh Momeni, a U.S. citizen, filed I-130 visa applications on behalf of her mother and father, Ms. Mahin Honari and Mr. Mansour Momeni, also plaintiffs in this action and citizens of Iran. Following their immigrant visa interviews on October 13, 2022, Ms. Honari's application was approved, but Mr. Momeni's application was refused and placed in administrative processing pursuant to Section 221(g) of the Immigration and Nationality Act (INA). In October 2023, Ms. Honari's immigrant visa application was canceled due to her failure to take additional action within one year of being approved. Mr. Momeni's application remains in administrative processing.

    Plaintiffs brought suit under the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 701 *et seq*, the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Due Process Clause of the Fifth Amendment to compel action on their immigrant visa applications. Specifically, alleging that the defendants have unreasonably delayed the processing of Mr. Momeni's visa application, Plaintiffs seek an order mandating adjudication of Mr. Momeni's application and reinstatement of Ms. Honari's immigrant visa. Defendants moved to dismiss the case for lack of subject matter jurisdiction and for failure to state a claim upon which

1

relief can be granted. For the foregoing reasons, the Court will **GRANT** the defendants' motion and dismiss plaintiffs' Complaint.

## I. BACKGROUND

### A. Factual History

Mr. Momeni and Ms. Honari are Iranian nationals and the parents of Pooneh Momeni, a U.S. citizen. Compl. ¶ 2. In November 2018, Ms. Pooneh Momeni filed an I-390 Petition for an Alien Relative for each of her parents. Compl. ¶ 4. Following approval by the United States Customs and Immigration Services (USCIS), in June 2019, Mr. Momeni and Ms. Honari timely filed their DS-260 visa applications and all required supporting documentation with the National Visa Center (NVC). Compl. ¶¶ 5–6. The NVC determined Ms. Honari to be "documentarily qualified" on January 28, 2021, and a year and a half later, reached the same determination regarding Mr. Momeni. Comp ¶¶ 7–9.

Mr. Momeni and Ms. Honari then appeared for their immigrant visa interviews at the United States embassy in Abu Dhabi, United Arab Emirates, on October 13, 2022. Compl. ¶ 10. Following the interview, Ms. Honari's visa application was approved, but Mr. Momeni's application was "placed in administrative processing" under Section 221(g) of the INA, requiring supplemental paperwork. Compl. ¶ 11. Mr. Momeni was instructed to complete Form DS-5535, Supplemental Questions for Visa Applicants, which requires applicants to submit detailed residential, employment, and travel history. Compl. ¶ 11. Mr. Momeni timely submitted the requested information eight days later. Compl. ¶ 11. Ms. Honari was informed by the embassy that she could delay receipt of her immigrant visa until Mr. Momeni's visa was further determined,

to which she agreed.[1]  Compl. ¶ 12.  The couple has no immediate family in Iran, and Mr. Momeni, at 90 years old, could not remain alone in Iran for his own health and well-being.  Compl. ¶ 12.

Ms. Pooneh Momeni made several attempts to contact the embassy and various congressional offices between November 2022 and April 2023 regarding the status of Mr. Momeni's application, and she was repeatedly informed that his application remained in administrative processing and the embassy was unable to predict a time for further resolution.  Compl. ¶¶ 13–16.  She emailed the embassy in July 2023 and did not receive a response.  Compl. ¶ 17.  As of October 18, 2023, Ms. Honari's immigrant visa has been canceled under Section 203(g) of the INA, as she failed to take additional action on her visa within one year of being approved.  Compl. ¶ 19.[2]

On November 14, 2023, Plaintiffs filed their Complaint against Secretary of State Antony Blinken, Secretary of Homeland Security Alejandro Mayorkas, and Attorney General Merrick Garland to adjudicate Plaintiffs' immigrant visa applications.  Compl. ¶¶ 27–29.  Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201.  Compl. ¶ 22.  Plaintiffs also raise a Fifth Amendment due process challenge.  Compl. ¶¶ 38–39.  On January 16, 2024,

---

[1] In their opposition brief, Plaintiffs first state that Ms. Honari was "instructed by the U.S. Embassy" to await the adjudication of Mr. Momeni's visa application before taking action on her own.  Pls.' Opp'n at 2.  Later in the opposition, Plaintiffs state that they "repeatedly informed the embassy . . . that Plaintiff Honari was unable to 'take action' on her immigrant visa due to . . . [Mr. Momeni's] advanced age and lack of any support system in Iran."  *Id.* at 9; *see also id.* at 13 ("Plaintiffs repeatedly informed the embassy of the urgency of the situation, namely . . . Plaintiff Honari's immigrant visa being set to expire in a year.").  It is unclear to what extent the embassy gave Ms. Honari incorrect advice regarding her own application, resulting in its cancelation.  But taking the allegations in the complaint as true, as the Court must at the motion to dismiss stage, this Court is nonetheless unable to provide the requested relief to Ms. Honari, as explained in Section III.D *infra*.

[2] "Courts may take judicial notice of information that is posted on official public websites of government agencies when evaluating a motion to dismiss." *Chowdhury v. Blinken*, No. 21-cv-1205 (RCL), 2022 WL 136795, at *1 n.1 (D.D.C. Jan. 14, 2022) (citing *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016)).  The Court will take judicial notice that the Department of State's Visa Status Check website lists Mr. Momeni's visa application as "Refused" and Ms. Honari's visa application as "Refused."  *See Visa Status Check*, U.S. Dep't of St., https://ceac.state.gov/CEACStatTracker/Status.aspx [https://perma.cc/NS4H-BST9].

defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Defs.' Mot., ECF No. 5. Plaintiffs filed an opposition on February 15, 2024. Pls.' Opp'n, ECF No. 9. Defendants filed a reply on March 7, 2024. Defs.' Reply, ECF No. 13. In July 2024, Defendants filed two notices of supplemental authority. ECF Nos. 14, 15. Defendants' motion is now ripe for review.

## II. LEGAL STANDARDS

### A. Motions to Dismiss

A defendant in a civil action may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A court considering such a motion must take all the well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "[A] court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim," including to "resolve factual disputes concerning jurisdiction." *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (Brown, Jackson, J.) (internal quotation marks and citations omitted).

A defendant in a civil action may also move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual

allegations are true and construes them liberally in the plaintiff's favor." *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018). However, "[a] court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citation omitted).

**B. Unreasonable Delay**

Plaintiffs' APA claim and mandamus claim rest on the same theory: that Defendants unreasonably delayed the adjudication of Mr. Momeni's visa. The APA commands that "within a reasonable time, each agency shall proceed to conclude a matter presented to it" and permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 555(b), 706(1). A court evaluating a claim of unreasonable delay must "consider whether the agency's failure to respond is 'so egregious' as to warrant relief." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.3d 70, 79 (D.C. Cir. 1984)). The D.C. Circuit has identified six factors for courts to consider when making this determination:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.3d at 80 (internal quotations and citations omitted). The standard for unreasonable delay under the Mandamus Act is "identical to the APA standard." *Tate*, 513 F. Supp. 3d at 148 n.7.

5

### III.    DISCUSSION

Defendants raise six arguments for dismissal: (1) Defendants have no role or authority in adjudicating Plaintiffs' visa applications, so no case or controversy exists and Plaintiffs lack Article III standing;[3] (2) the Court lacks subject matter jurisdiction because Defendants are shielded by the doctrine of consular nonreviewability; (3) the Court lacks mandamus jurisdiction because Defendants do not have a non-discretionary duty to adjudicate visa applications; (4) Plaintiffs fail to state a claim because the alleged delay is not unreasonable under the six-factor test prescribed in *TRAC*; (5) the harm to Ms. Honari is not traceable to Defendants because it was caused by Ms. Honari's own inaction; and (6) Plaintiffs fail to state a cognizable due process claim.[4]

The Court will grant Defendants' motion based on arguments (4), (5), and (6). Earlier this year, in a dispute with nearly identical facts, this Court rejected arguments (1) and (2). *Sharifymoghaddam v. Blinken*, No. 23-cv-1472 (RCL), 2024 WL 939991, at *1 (D.D.C. Mar. 5, 2024) (Lamberth, J.). However, this Court also concluded that regarding argument (3), even if the defendants are subject to a non-discretionary duty, argument (4) prevails; the *TRAC* test resulted in a finding that the delay was not unreasonable, and this Court dismissed the complaint. *Id.* at *4. Here, the Court will follow a similar course of action and dismiss Plaintiffs' claim of unreasonable delay for failure to state a claim. The remaining arguments, (5) and (6), will also result in dismissal—consular nonreviewability prevents this Court from reinstating of Ms. Honari's

---

[3] In their opposition, Plaintiffs concede that Alejandro Mayorkas, Secretary of Homeland Security, and Merrick Garland, Attorney General, were improperly named as defendants. *See* Pls.' Opp'n at 3. This Court will therefore proceed to analyze the motion to dismiss regarding only the claim against Secretary of State Antony Blinken.

[4] The Court has switched the order of arguments (4) and (5) from how they were listed in the parties' briefs based on this Court's organization of the analysis.

immigrant visa in these circumstances, and there is no cognizable due process violation at issue. Therefore, this Court will grant Defendants' motion.

## A. Standing

As this Court did in *Sharifymoghaddam*, the Court will construe defendants' argument that the Secretary of State has "no role" in adjudicating plaintiffs' visa applications as an Article III standing challenge, specifically targeting the requirement of redressability. 2024 WL 939991 at *3 (citing *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014)). And again here, the Court will reject that argument. Although "the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications 'within a reasonable time,' as the APA requires." *Khazaei v. Blinken*, No. 23-cv-1419 (JEB), 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023); *see also Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *3 (D.D.C. Aug. 8, 2024) ("[C]ontrol over visa *determinations* is distinguishable from control over the *timing* of visa determinations."). Therefore, Secretary Blinken is properly named as a defendant.

## B. Consular Nonreviewability

"Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." *Baan Rao Thai Restaurant v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (citing *Saavedra Bruno*, 197 F.3d at 1159). Courts in this Circuit, including this one on multiple occasions, have consistently held that when a visa application is still undergoing administrative processing, the State Department's decision is not final after initial refusal. *See Sharifymoghaddam*, 2024 WL 9399991 at *4 (Lamberth, J.); *Joorabi v. Pompeo*, 464 F. Supp. 3d 93, 100 (D.D.C. 2020) (Lamberth, J.); *see also Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-cv-397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020); *Al-*

7

*Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 99 (D.D.C. 2020).  In other words, "any [p]laintiff with an application in 'administrative processing' has not yet received a final decision," so it would not offend consular nonreviewability to order accelerated action on a pending application.  *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 287-288 (D.D.C. 2016).

The Court observes that the D.C. Circuit's recent unpublished decision in *Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), calls the reasoning in those decisions into question.  The *Karimova* panel held that once a consular official refuses a visa application, even if it is contemporaneously placed in administrative processing, the visa has been "officially refused" and the decision is considered final.  *Id.* at *2.  Here, as other Courts in this District have done, the Court will not further analyze the impact of *Karimova* on the facts before it, because defendants are entitled to dismissal in any event.  *See Motevali v. Blinken*, No. CV 23-cv-2133 (RC), 2024 WL 3580937, at *4 (D.D.C. July 30, 2024) (noting the potential impact of *Karimova* on consular nonreviewability of visa applications in administrative processing, but declining to explore the implications and dismissing on the merits of unreasonable delay); *see also Sharifshourabi v. Blinken*, No. 23-cv-3382 (RC), 2024 WL 3566226, at *5 (D.D.C. July 29, 2024) (same).

**C.  Unreasonable Delay**

The Court concludes that defendants are entitled to dismissal under Rule 12(b)(6) because Plaintiffs have failed to plausibly allege unreasonable delay of Mr. Momeni's visa application. Courts in this district have repeatedly held that it is appropriate to grant a motion to dismiss based on the "application of the *TRAC* factors to the factual allegations of a complaint asserting a claim

8

of 'unreasonable delay.'" *Chowdhury*, 2022 WL 136795, at *3 (quoting *Desai v. U.S. Citizenship & Immigr. Servs.*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021)).

The Court may, for the purposes of this analysis, assume that plaintiffs have asserted the existence of "a discrete agency action that [the agency] is required to take" because in any event, Plaintiffs do not sufficiently allege unreasonable delay. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see also Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *6 & n.5 (D.D.C. Feb. 7, 2024) (assuming without deciding the existence of a "discrete, required duty" as a baseline for applying the *TRAC* factors to reject the allegation of unreasonable delay).[5] Applying the *TRAC* factors to the allegations in the Complaint and judicially noticeable facts, this Court holds that Plaintiffs have failed to state a claim that the delayed adjudication of Mr. Momeni's application was unreasonable.

**1. *TRAC* Factors 1 and 2**

The first *TRAC* factor, which commands that the time agencies take to make decisions must be governed by a rule of reason, is the "most important." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The second *TRAC* factor "provides that the content of such a rule [of reason] may be found in a 'timetable or other indication . . . in the enabling statute.'" *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (quoting *TRAC*, 750 F.2d at 80). Put together, these factors "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable

---

[5] Again here, the Court is mindful of the D.C. Circuit's recent unpublished decision in *Karimova*, which casts doubt on whether consular officers are subject to a discrete, mandatory duty to timely complete administrative processing after initial refusal. 2024 WL 3517852, at *3-4. As several other courts in this Circuit have done in the wake of this opinion, the Court will dismiss plaintiffs' claim based on their failure to allege unreasonable delay, without deciding whether *Karimova* independently requires dismissal. *See, e.g.*, *Baygan v. Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024); *Fallahi v. Bell*, No. 23-cv-3292 (APM), 2024 WL 3887380, at *3 n.3 (D.D.C. Aug. 20, 2024); *Liu v. Garland*, No. 23-cv-1914 (RBW), 2024 WL 3924564, at *5 n.2 (D.D.C. Aug. 23, 2024).

rationale," and whether there is any "rhyme or reason" for the agency's delay. *Id.* Because the INA does not prescribe any statutory timetable, courts "typically turn to case law as a guide" to determine the timeframe in which the State Department or consular official must adjudicate a pending visa application. *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Rahman*, 2023 WL 196428, at *4 (quoting *Sawahreh*, 2022 WL 4365746, at *5).

As plaintiffs themselves correctly note, TRAC factors 1 and 2 favor defendants in this case because Mr. Momeni had only been waiting sixteen months at the time of filing the opposition (now twenty-three months). *See* Pls.' Opp'n at 11-12.

### 2. *TRAC* Factor 4

The fourth *TRAC* factor, which asks the Court to consider the effect of expediting delayed action on agency activities of a higher or competing priority, weighs in Defendants' favor. "Where the agency action sought is one of many similar adjudications that the agency must complete, the court should be even more cautious before intervening." *Skalka v. Kelly*, 246 F. Supp. 3d. 147, 153 (D.D.C. 2017). This factor has been characterized as one that "often . . . carries the greatest weight." *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 15 (D.D.C. 2022) (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).

Plaintiffs initially concede that this factor weighs in defendants' favor "due to the importance of 'competing priorities.'" Pls.' Opp'n at 12. However, Plaintiffs attempt to carve out a distinction in their case, arguing "not that their case should be moved ahead of others waiting in line, but rather that the entire administrative processing line be granted additional priority to expedite final decisions on these visa applications." *Id.* at 13. To the Court, this reads as a

distinction without a difference—at bottom, Plaintiffs are still asking for this Court to re-order the agency's priorities, an action that courts are foreclosed from taking. Granting Plaintiffs' "requested relief would simply move them ahead in the processing queue to the detriment of other similarly situated visa applicants." *Thakker v. Renaud*, No. 20-cv-1133 (CKK), 2021 WL 1092269, at *7 (D.D.C. Mar. 22, 2021), *appeal dismissed*, No. 21-5079, 2021 WL 3083431 (D.C. Cir. July 14, 2021).

### 3. *TRAC* Factors 3 and 5

"The third and fifth factors are often considered together, and require the Court to consider plaintiffs' interests, health, and welfare." *Chowdhury*, 2022 WL 136795, at *4 (alteration brackets omitted) (quoting *Thakker*, 2021 WL 1092269, at *7). These factors weigh in favor of plaintiffs. Mr. Momeni and Ms. Honari were 90 and 86 years of age, respectively, at the time of filing this action. Compl ¶ 42. They are currently living in Iran without any immediate family members to care for them, and given their age, they urgently require the care and support of their family in the United States. Compl. ¶ 42. Three of their four daughters live in the United States, and they have not seen their grandchildren in eighteen years. Compl. ¶ 42. "Taking these alleged adverse effects as true, as the Court must at this stage, the plaintiffs are in a worse position than visa applicants who merely claim that their lives have been put 'on hold' by the visa delay." *Pourabdollah*, 2024 WL 474523, at *8 (internal citation omitted) (quoting *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021)).

### 4. *TRAC* Factor 6

The last *TRAC* factor asks whether the agency has acted in bad faith. *Fakhimi v. U.S. Dep't of State*, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *11 (D.D.C. Oct. 23, 2023). The Circuit

has cautioned that a finding of bad faith or impropriety is not necessary to hold that an agency action is unreasonably delayed. *TRAC*, 750 F.2d at 80.

Plaintiffs argue that they "repeatedly informed the embassy of the urgency of the situation, namely of Plaintiffs' advanced age and lack of support in Iran, along with Plaintiff Honari's immigrant visa being scheduled to expire in a year." Pls.' Opp'n at 13. In their view, "[t]he embassy's failure to act on Plaintiff Momeni's via application given this significant time constraint and hardship to Plaintiffs, along with the additional requirements placed on Iranian applicants such as Plaintiffs," allows the Court to draw an inference of bad faith. *Id.* These allegations, however, do not constitute a showing of bad faith, but instead appear to reflect plaintiffs' understandable frustration with their predicament. While the Court sympathizes with plaintiffs, the agency's delay does not appear "intentional" or to be "the result of any impropriety." *Sawahreh v. United States Dep't of State*, 630 F. Supp. 3d 155, 164 (D.D.C. 2022).[6]

Overall, *TRAC* factors 1, 2, and 4 weigh in defendants' favor; *TRAC* factors 3 and 5 weigh in plaintiffs' favor; and *TRAC* factor 6 is at best neutral for Plaintiffs. As noted above, factors 1, 2, and 4 carry the most weight, and here, factors 3 and 5 are insufficient to overcome the factors that favor the defense. On balance, this Court finds that plaintiffs have not stated a claim for unreasonable delay of Mr. Momeni's visa application under the APA, and defendants' 12(b)(6) motion to dismiss will be granted.

---

[6] Though plaintiffs do not argue this specifically, the only conceivable allegation of bad faith that could be extrapolated from the complaint is that the defendants intentionally misdirected Ms. Honari to wait until the adjudication of Mr.Momeni's visa application before taking action, and thereby misleading her into letting the one-year deadline lapse on her own application. For several reasons, however, this argument falters in plaintiffs' case. For one, there are no facts to suggest any bad faith behind the delay of Mr. Momeni's application, which is what *TRAC* factor 6 considers— regardless of the impact on Ms. Honari's application. Second, there are no facts to suggest that any information from the embassy was intentionally misleading, and in fact, plaintiffs' opposition suggests that they were aware that Ms. Honari's visa approval was set to expire after one year. *See* Pls.' Opp'n at 13.

**D. Ms. Honari's Visa Cancelation**

Defendants argue that "cancelation and any delay in [Ms. Honari] receiving her visa after such cancelation was caused by Honari's failure to act on her approved visa within a year after it was approved," and therefore, there is no relief the Court can grant for her failure to timely act. Defs.' Mot. at 19 (citing the redressability requirement of standing). Plaintiffs respond by noting that Ms. Honari "repeatedly informed the embassy" that she "was unable to 'take action' on her immigrant visa" given Mr. Momeni's pending application. Pls. Opp'n at 9. Plaintiffs also contend that Ms. Honari delayed action on her application "as instructed by the U.S. Embassy." Pls.' Opp'n at 2; *see also* Compl. ¶ 12 (stating that "Ms. Honari was informed by the Embassy that she could delay receipt of her immigrant visa until her husband's visa was adjudicated" and that she "agreed to delay the receipt of her approved immigrant visa").

Regardless of the specific chain of events resulting in Ms. Honari's visa cancelation, the Court is unable to provide declaratory or injunctive relief to reinstate Ms. Honari's visa.[7] "Courts can compel an agency to take a discrete agency action that it is required to take." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (citing *Norton*, 542 U.S. at 64). The required action must be "'ministerial or non-discretionary[,]' amounting to a 'specific, unequivocal command.'" *Id.* (quoting *Norton*, 542 U.S. at 63–64). This Court cannot locate any authority to support the proposition that the agency is required to reinstate a visa for an applicant in Ms. Honari's position, and therefore, this Court cannot command such action. Indeed, Ms. Honari's requested relief runs head-on into the doctrine of consular nonreviewability, as Defendants suggest. *See* Defs.' Mot. at 10; *see also Dep't of State v. Munoz*, 144 S. Ct. 1812, 1814

---

[7] The Court assumes that plaintiffs have invoked the Declaratory Judgment Act, 28 U.S.C. § 2201, as the basis for relief for Ms. Honari to reinstate her visa. Compl. ¶¶ 22, 42(2).

13

(2024) ("Under the doctrine of consular nonreviewability, an executive officer's decision to admit or to exclude an alien is final and conclusive, and not subject to judicial review in federal court.") (citations omitted); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1162 (D.C. Cir. 1999) (noting "the long history of judicial noninterference with the judgments of consular officers regarding visas" and that "the immigration laws preclude judicial review of consular visa decisions"). Therefore, this Court lacks subject matter jurisdiction to re-adjudicate Ms. Honari's visa because the agency is shielded by the doctrine of consular nonreviewability.

### E.  Due Process

As Defendants note, Plaintiffs do not specify whether they are bringing a procedural or substantive due process challenge. In either event, the challenge fails. "To state a [procedural] due process claim, plaintiffs must plausibly allege, first, that 'there exists a liberty or property interest of which plaintiff has been deprived,' and second, that the procedures the government provided were constitutionally inadequate." *Ghadami*, 2020 WL 1308376, at *10 (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam)). Plaintiffs correctly identify this standard but recycle the same arguments informing their unreasonable delay challenge, without identifying any constitutionally protected interest. *See* Pls. Opp'n at 14. And indeed, there is no constitutionally protected interest here: the Supreme Court has long held that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982). In other words, non-citizens "ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020).

To the extent Ms. Pooneh Momeni seeks relief based on an alleged substantive due process right to be reunited with her non-citizen parents, this argument also fails. *See Ghadami*, 2020 WL 1308376, at *11 (denying plaintiffs' due process claim regarding unreasonable delay because "[t]he D.C. Circuit does not recognize a relationship protected under the due process clause where the child is an independent adult"); *see also Singh v. Tillerson*, 271 F. Supp. 3d 64, 70 (D.D.C. 2017) (finding that the limited exception to consular nonreviewability for visa decisions violating a constitutionally protected liberty interest did not apply because plaintiffs did not have a liberty interest in the parent-child relationship).

\* \* \*

The Court certainly sympathizes with Plaintiffs in this difficult and urgent situation. However, as is consistent with the many decisions in this district operating in the landscape of tremendous backlogs in visa processing, this Court is unable to provide the requested relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the defendants' motion to dismiss. A separate Order consistent with this Memorandum Opinion shall issue.

Date: September 26, 2024

Royce C. Lamberth
United States District Judge